**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ANTONIO LYNN FLUKER, JR., | No. 4:26-CV-00683 |
| Petitioner, | (Chief Judge Brann) |
| v. | |
| WARDEN FCI SCHUYLKILL, | |
| Respondent. | |

**MEMORANDUM OPINION**

**NOVEMBER 18, 2026**

Petitioner Antonio Lynn Fluker, Jr., is currently confined at the Federal Correctional Institution Schuylkill (FCI Schuylkill), in Minersville, Pennsylvania. He filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. He asserts that his procedural due process rights were violated during several disciplinary proceedings, resulting in the loss of good-conduct time and other sanctions. For the following reasons, the Court will deny Fluker's Section 2241 petition.

## I. BACKGROUND

Fluker is currently serving a 135-month aggregate sentence for wire fraud, money laundering, identity theft, and escape from federal custody imposed by the United States District Court for the Eastern District of Michigan.[1] On March 17,

---

[1] *See* Doc. 9-2 at 2 ¶ 3.

2026, he lodged a petition under 28 U.S.C. § 2241 in this Court, challenging three separate prison disciplinary proceedings.[2]

Fluker's first challenge involves Incident Report 3899360, which was issued on February 23, 2024, and delivered to Fluker the following day.[3] In that report, Fluker was charged with Offense Code 108 (Possessing a Hazardous Tool), after prison authorities discovered a cellphone charging cord hidden behind the electrical outlet in a common area of Fluker's cell, which cell he shared with another inmate.[4] This charge is designated by the Federal Bureau of Prisons (BOP) as one of the "Greatest Severity Level Prohibited Acts."[5]

On February 27, 2024, Fluker received notice of his hearing before a Discipline Hearing Officer (DHO), and at that time he waived his rights to a staff representative and to witnesses.[6] He also received and signed the BOP's standard notice of his rights for the upcoming DHO hearing.[7] At that March 1, 2024 hearing, Fluker admitted to committing the charged offense.[8] The DHO found that Fluker had committed the prohibited act of disruptive conduct (Offense Code 199) most like possession of a hazardous tool, based on the incident report, Fluker's

---

2 *See generally* Doc. 1.

3 *See* Doc. 9-5 at 2. The events in Fluker's first claim occurred while he was incarcerated at FCI Milan. *See* Doc. 9-6 at 2.

4 *See* Doc. 9-5 at 2-3.

5 *See* 28 C.F.R. § 541.3 (table 1).

6 Doc. 9-5 at 5.

7 *Id.* at 6.

8 *See* Doc. 9-6 at 2 (stating to DHO, "[The cellphone charger] was mine, my cellie had nothing to do with it.").

lack of defense, photographic evidence, and the chain of custody.[9] Fluker was sanctioned with the loss of 41 days' good-conduct time, 60 days' loss of commissary, and 60 days' loss of phone privileges.[10] He asserts that the DHO's report was not delivered to him until nearly 11 months later due to "unforeseen circumstances."[11]

Fluker next challenges the disciplinary event outlined in Incident Report 4086254. That report was issued on March 26, 2025, and delivered to Fluker the same day.[12] It charged him with committing criminal mail abuse (Offense Code 196) and conducting a business without authorization (Offense Code 334).[13] Fluker again received written notice of his rights, and once more waived his right to a staff representative and to witnesses.[14]

At the April 1, 2025 hearing, the DHO found that Fluker had committed the prohibited act of disruptive conduct (Offense Code 199), most like criminal mail abuse (Offense Code 196).[15] Fluker was sanctioned with the loss of 41 days' good-conduct time, 30 days' disciplinary segregation, 180 days' loss of commissary, 30 days' loss of email privileges, and 180 days' loss of visitation.[16]

---

9 *See id.* at 3-4.
10 *See id.* at 4.
11 *See* Doc. 1 at 1; Doc. 9-6 at 5 (noting delivery date of DHO report as January 31, 2025).
12 *See* Doc. 9-7 at 2-3.
13 *Id.* at 2.
14 *Id.* at 8, 9.
15 Doc. 9-8 at 3-4.
16 *See id.* at 5.

Finally, Fluker challenges the disciplinary process involved with Incident Report 4189908. He alleges that he was charged with possession of contraband (Offense Code 305), and that on October 9, 2025, the DHO found that he had committed this prohibited act.[17] Fluker's only sanction for this disciplinary infraction was 30 days' loss of visitation.[18]

After exhausting his administrative appeals (at least as to the first two disciplinary incidents), Fluker filed the instant Section 2241 petition. His petition is fully briefed and ripe for disposition.

## II. Discussion

At the outset, the Court observes that only two of the three disciplinary incidents are subject to habeas review, as only the first two events resulted in the loss of good-conduct time.[19] The third infraction, outlined in Incident Report 4189908, carried only a sanction of 30 days' loss of visitation. The Court has no habeas jurisdiction to consider a Section 2241 challenge to this third incident, as it does not implicate the fact or duration of Fluker's confinement,[20] nor the execution of his sentence.[21]

---

17 Doc. 1 at 2.

18 *See* Doc. 9-2 at 2 ¶ 4.

19 *See Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991) ("[A] prisoner has a constitutionally protected liberty interest in good time credit.").

20 *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).

21 *See Cardona v. Bledsoe*, 681 F.3d 533, 537 (3d Cir. 2012). In his traverse, Fluker speculates that this disciplinary infraction "adversely affects his recidivism classification and his ability to earn and apply time credits under the First Step Act [(FSA)]." Doc. 10 at 5. Yet Fluker provides no plausible allegations, let alone evidence, that this disciplinary incident actually

Consequently, the only disciplinary incidents at issue are 3899360 and 4086254. The Court will examine Fluker's challenges to these proceedings in turn.

### A. Incident Report 3899360

Fluker contends that this disciplinary incident violated his due process rights because he informed prison officials that he had "mental health issues," including "auditory hallucinations, suicidal ideation, and a diagnosis of bipolar disorder," but he was not referred to mental health services.[22] He claims this failure to refer violated 28 C.F.R. § 541.6.[23] He additionally asserts that he requested "Officer Fleming" as a staff representative and inmate "Frederick Dixon" as a witness, but his requests were denied "without explanation."[24]

---

affected the duration of his confinement. He instead argues that the government should be forced to "produce the DHO record and address whether the conviction has affected [his] PATTERN score, credit-earning status, or credit application." *Id.* But that is not the government's burden in Section 2241 proceedings. Rather, the petitioner seeking federal habeas relief has the burden to establish that habeas relief is due. *See* 28 U.S.C. § 2241(c)(3); *United States v. Hollis*, 569 F.2d 199, 205 (3d Cir. 1977); *Walker v. Johnston*, 312 U.S. 275, 286 (1941). Fluker has not proffered sufficient allegations that, if true, would entitle him to federal habeas relief on this third disciplinary incident. *See Palmer v. Hendricks*, 592 F.3d 386, 392 (3d Cir. 2010) (citation omitted)). His uncertainty and speculation as to the disciplinary incident's effect—if any—on his PATTERN score and the application of FSA credits is wholly insufficient to establish habeas jurisdiction. Accordingly, this third disciplinary incident will not be discussed further.

[22] Doc. 1 at 1.

[23] *Id.*

[24] *Id.* Fluker also contends that he did not receive a copy of the DHO report until many months after the hearing. *Id.* But the record is clear that he did eventually receive a copy of the report (which contained the evidence relied on and the reasons for the disciplinary action) on January 31, 2025. He was then able to administratively appeal the DHO's decision. Fluker, therefore, has not shown how receiving this late report violated his due process rights under *Wolff v. McDonnell* or prejudiced him in any way. *See Griffin v. Ebbert*, 640 F. App'x 181, 184 (3d Cir. 2016) (nonprecedential) (holding that inmate who received written DHO report 18 months after hearing, but who did not show prejudice, could not establish that his due process rights were violated (citing *Wilson v. Ashcroft*, 350 F.3d 377, 381 (3d Cir. 2003))).

Inmates retain certain procedural due process rights in prison disciplinary proceedings, although these rights "may be curtailed by the demands and realities of the prison environment."[25] *Wolff v. McDonnell* enumerates those protections and requires, at minimum, (1) the right to appear before an impartial decision-making body; (2) written notice of the charge(s) at least 24 hours in advance of the disciplinary hearing; (3) an opportunity to call witnesses and present documentary evidence (so long as the presentation of such evidence is not "unduly hazardous to institutional safety or correctional goals"); (4) if the inmate is illiterate or complex issues are involved, assistance from another inmate or a staff member; and (5) a written decision by the factfinder setting forth the evidence relied on and the reasons for the disciplinary action.[26]

Fluker first contends that his due process rights were violated because he was suffering from mental health issues during his disciplinary proceedings but was not referred to mental health staff for evaluation, in violation of the BOP regulation codified at 28 C.F.R. § 541.6. He asserts this argument for both Incident Report 3899360 and Incident Report 4086254. His claim, however, fails for multiple reasons.

---

25 *Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991) (citing *Wolff v. McDonnell*, 418 U.S. 539, 555-56 (1974)).

26 *Wolff*, 418 U.S. at 563-70 (citations omitted).

First, it is well settled that technical non-compliance with a prison policy or regulation is not, in itself, a violation of due process.[27] Merely because BOP officials fail to comply with a particular policy or regulation does not automatically mean they have infringed a prisoner's constitutional rights.

Second, Fluker has not established that prison officials actually violated the regulation. The regulation Fluker cites indicates that if an inmate "appears" mentally ill during the discipline process, they will be examined by mental health staff and the UDC or DHO will decide whether the inmate is competent to participate in the disciplinary proceedings.[28] As the Administrator for National Inmate Appeals observed, Section 541.6 requires staff to refer inmates to a mental health professional "only if it appears they may be mentally ill at any stage of the disciplinary process."[29] Yet, as the Administrator further noted, Fluker provided no evidence showing that he was mentally ill at the time of the disciplinary proceedings, nor was any such evidence discovered during administrative review.[30]

---

[27] *See Sandin v. Conner*, 515 U.S. 472, 481-82 (1995) (explaining that prison regulations are "primarily designed to guide correctional officials in the administration of a prison," they are "not designed to confer rights on inmates"); *Millhouse v. Bledsoe*, 458 F. App'x 200, 203 (3d Cir. 2012) (nonprecedential); *Bullard v. Scism*, 449 F. App'x 232, 235 (3d Cir. 2011) (nonprecedential) (explaining that, even if prison officials violated a regulation, such a violation "is not actionable"); *Atwell v. Lavan*, 557 F. Supp. 2d 532, 556 n.24 (M.D. Pa. 2007) (citations omitted); *Jordan v. Rowley*, No. 1:16-CV-1261, 2017 WL 2813294, at *2 (M.D. Pa. June 29, 2017); *Williamson v. Garman*, No. 3:15-CV-1797, 2017 WL 2702539, at *6 (M.D. Pa. June 22, 2017); *see also United States v. Jiles*, 658 F.2d 194, 200 (3d Cir. 1981) (noting that even violations of state law will not automatically have a "constitutional dimension").

[28] *See* 28 C.F.R. § 541.6.

[29] Doc. 10-3 at 5.

[30] *Id.*

Additionally, Fluker's mental health status at that time was documented as "Care Level 1," the lowest level of severity.[31] Thus, although Fluker attests that he told prison officials that he was suffering from mental health problems, it seems that prison staff (including the DHO) did not find that Fluker appeared mentally ill such that referral to mental health staff was required.

Such a finding is bolstered by Fluker's contemporaneous participation in federal litigation, including appeals to the United States Court of Appeals for the Sixth Circuit, which he litigated continuously from September 2022 through 2026.[32] Fluker himself admits that he explained to the DHO that he was currently participating in this ongoing federal litigation,[33] further undermining his claim of failing to understand the less complex disciplinary proceedings.

Finally, assuming only for the sake of argument that prison officials violated this regulation, Fluker has not demonstrated that he was prejudiced.[34] During the DHO hearing for Incident Report 3899360, Fluker plainly admitted that the

---

31 *Id.*; *see* U.S. DEP'T OF JUSTICE, BUREAU OF PRISONS, *Care Level Classifications for Medical and Mental Health Conditions or Disabilities* (May 2019), https://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf (last visited Nov. 11, 2026).

32 *See generally Fluker v. Trans Union, LLC*, No. 1:22-cv-12240 (E.D. Mich.); *Fluker v. Trans Union, LLC*, No. 1:24-cv-12738 (E.D. Mich.), *aff'd*, No. 25-1752 (6th Cir. 2026).

33 *See* Doc. 1 at 2; Doc. 9-8 at 4.

34 *See, e.g.*, *Elkin v. Fauver*, 969 F.2d 48, 53 (3d Cir. 1992) (agreeing with district court that "[i]n the absence of a recent pattern of violations, it is entirely inappropriate to overturn the outcome of a prison disciplinary proceeding because of a procedural error without making the normal appellate assessment as to whether the error was harmless or prejudicial"); *Pachtinger v. Grondolsky*, 340 F. App'x 774, 776-77 (3d Cir. 2009) (explaining that petitioner failed to show prejudice by absence of witness's testimony at DHO hearing); *see also Wilson v. Ashcroft*, 350 F.3d 377, 381 (3d Cir. 2003) (stating, in immigration context, that "there would be no due process violation in the absence of prejudice").

cellphone charger was his and not his cellmate's.[35] Moreover, even if he would have denied ownership of the charger, which was found in a common area of his cell, the result of the DHO hearing would not have been different. The United States Court of Appeals for the Third Circuit has explicitly held that discovery of contraband in a hidden area accessible from a prisoner's cell is sufficient—in the prison setting—to constitute "some evidence" that the prisoner possessed the contraband.[36]

The same is true for Incident Report 4086254. Fluker has not put forth any argument or evidence as to why the outcome of this disciplinary proceeding would have been different had the hearing been postponed due to his alleged mental health issues.[37] As explained below, the communications for which Fluker was disciplined had no connection to his pending federal litigation.[38] Moreover, Fluker has not provided any evidence—beyond his own post-hoc attestations—to show that his mental health issues would have rendered him "unable to appreciate the

---

35 *See* Doc. 9-6 at 2.

36 *See Denny v. Schultz*, 708 F.3d 140, 147 (3d Cir. 2013) (holding that discovery of two homemade shanks found in hidden space accessible from petitioner's two-inmate cell, by itself, constituted "some evidence" that petitioner possessed the weapons in question); *Meeks v. Washington*, No. 21-2670, 2022 WL 18144109, at *3 (6th Cir. July 29, 2022) (nonprecedential) (quoting *Denny*, 708 F.3d at 145, for the proposition that courts "have uniformly held that the discovery of contraband in a shared cell constitutes 'some evidence' of possession sufficient to uphold a prison disciplinary sanction against each inmate in the cell"). The Court cites *Meeks v. Washington* specifically because Fluker was incarcerated at FCI Milan, located in Milan, Michigan (in the Sixth Circuit), during the first disciplinary incident.

37 *See* 28 C.F.R. § 541.6(a).

38 *See infra*, Section II(B).

nature and quality, or wrongfulness" of his conduct.[39] To the contrary, the contents of his emails reflect a calculated, sophisticated scheme to utilize a Non-Governmental Organization to produce fraudulent trafficking-victim letters to be used to challenge negative information on credit reports.[40] Permitting an inmate like Fluker to undermine the outcome of prison disciplinary proceedings with *only* post-hoc averments of mental health issues would open the door for the reversal of innumerable disciplinary sanctions based solely on an inmate alleging—after the fact—that they were unable to properly participate in the disciplinary process because of mental health issues.

Fluker has not proffered any relevant evidence that the result of his disciplinary proceedings in either incident would have been different had BOP officials complied with 28 C.F.R. § 541.6. Thus, Fluker has not established that his *constitutional* due process rights were violated merely because BOP officials allegedly violated a regulation.[41]

In his second due process claim for Incident Report 3899360, Fluker argues that even though he initially waived his right to a staff representative and witnesses, he later reasserted—at some unspecified time—that he wanted "Officer

---

39 *See* 28 C.F.R. § 541.6(b).
40 *See infra*, Section II(B).
41 *See Sandin*, 515 U.S. at 481-82; *Millhouse*, 458 F. App'x at 203.

Fleming" as a staff representative and inmate "Frederick Dixon" to testify on his behalf. He alleges that his requests were denied without explanation.

There is no contemporaneous record evidence that Fluker ever made these subsequent requests to prison officials after declining, in writing, a staff representative and witnesses. Indeed, in the DHO report, it is again noted that Fluker did not request a staff representative or witnesses.[42] Nevertheless, even when taking Fluker's allegations as true, his second due process claim also fails. That is because, as explained above, Fluker has not shown how he was prejudiced at his DHO hearing by the absence of Officer Fleming's assistance or inmate Dixon's testimony.

Fluker asserts that he wanted Officer Fleming to obtain written statements from Dixon and other inmates evincing FCI Milan staff's "failure to complete cell inspections prior to inmates being housed within their assigned cells," and to prepare evidence that "the item found was retrieved from a common area and its [sic] unreasonable for Fluker to be asked to inspect behind electrical wiring when [he] had no knowledge or control over that common area."[43]

Fluker's assertion regarding evidence of an absence of cell inspections has no factual support in the record and is entirely speculative. That is, he does not

---

[42] *See* Doc. 9-6 at 2, 3.
[43] Doc. 10-2 at 2.

provide evidence (like an affidavit or declaration) that any inmate would have proffered testimony regarding the absence of cell inspections at FCI Milan.

He likewise does not explain how such evidence would conclusively establish that some former cell inhabitant (and not Fluker) possessed and hid the cellphone charger behind the electrical outlet. Lack of a cell inspection proves that a former cell inhabitant possessed and hid the cellphone charger only if one first assumes that neither Fluker nor his cellmate hid the charger there *after* moving into the cell (following any inspection). Thus, the absence of a cell inspection does not prove Fluker's innocence.

Fluker's claim regarding presenting evidence as to where the cellphone charger was found is equally unavailing. As noted above, discovery of contraband in a common area accessible from a prisoner's cell is sufficient to constitute "some evidence" that the cell's inhabitant(s) possessed the contraband.[44] So even if the evidence Fluker references would have been presented, it would not have altered the outcome of the DHO hearing.

### B. Incident Report 4086254

In his initial petition, Fluker raises two challenges to the disciplinary proceedings for Incident Report 4086254. He first asserts an identical claim regarding 28 C.F.R. § 541.6 and mental health issues.[45] That claim need not be

---

44 *See Denny*, 708 F.3d at 147; *Meeks*, No. 21-2670, 2022 WL 18144109, at *3.
45 *See* Doc. 1 at 2.

addressed again, as it has been fully discussed and rejected in Section II(A) above. Fluker also appears to challenge the sufficiency of the evidence.[46] He asserts that he explained to the DHO that his communications were "related to pending Fair Credit Reporting Act lawsuits" and presented "litigation documents as corroboration," yet the DHO "nevertheless found him guilty."[47]

In his traverse, Fluker argues that his second due process challenge is really that "the DHO failed to give a reasoned explanation for rejecting [his] exculpatory evidence."[48] This argument, however, was not raised in Fluker's Section 2241 petition. Rather, he asserts it for the first time in his traverse. But raising an argument for the first time in a traverse is procedurally improper, and therefore this particular due process argument is waived.[49]

Even if it were not waived, it is meritless. There is no independent due process right in prison disciplinary proceedings to a "reasoned explanation" for the rejection of evidence. The outdated, nonbinding cases that Fluker cites for this

---

46 *See id.*

47 *Id.*

48 *See* Doc. 10 at 3.

49 *See Battle v. Garza*, No. 1:23-CV-0289, 2023 WL 8373172, at *1 n. 2 (M.D. Pa. Dec. 4, 2023) (explaining that petitioner's claims "raised for the first time in a reply brief [] are waived"); *Rush v. Shartle*, Civ. No. 13-4788, 2015 WL 5567307, at *2 n.2 (D.N.J. Sept. 22, 2015); *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005) (finding that argument first presented in petitioner's "traverse rather than in his habeas petition . . . was not properly before the district court and the district court did not err in declining to address it") (collecting cases); *Ryan v. Hendricks*, Civ. No. 04–4447, 2014 WL 268578, at *3 n.4 (D.N.J. Jan. 23, 2014) (same); *cf. Hayes v. Silvers, Langsam & Weitzman, P.C.*, 441 F. Supp. 3d 62, 67 n.5 (E.D. Pa. 2020) (argument raised for the first time in reply brief for civil lawsuit is waived); *McLendon v. Continental Can Co.*, 908 F.2d 1171, 1183 (3d Cir. 1990) (argument raised for the first time in reply brief on appeal is waived).

proposition are unpersuasive.[50] Fluker provides no case law from this Circuit (either binding or persuasive) to support his proposition, nor has this Court independently found any.

The United States Court of Appeals for the Third Circuit, which binds this Court, makes clear that with respect to evidence at prison disciplinary proceedings, the due process requirements that must be followed are established by the Supreme Court of the United States. Due process requires a written decision by the factfinder setting forth the evidence relied on and the reasons for the disciplinary action. And federal courts review the sufficiency of the evidence under a highly deferential "some evidence" standard. That is the standard of review that this Court must apply to Fluker's evidentiary challenge to incident 4086254.

When an inmate challenges the sufficiency of the evidence in a prison disciplinary proceeding that resulted in the loss of good-conduct time, "the requirements of due process are satisfied if *some evidence* supports the decision" to revoke good-time credits.[51] Determining whether this standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence."[52] Rather, the relevant

---

50 *See* Doc. 10 at 3 (citing, among other cases, *Whitford v. Boglino*, 63 F.3d 527 (7th Cir. 1995); *Stone-Bey v. Swihart*, 898 F. Supp. 1287 (N.D. Ind. 1995); *Scarpa v. Ponte*, 638 F. Supp. 1019 (D. Mass. 1986)).

51 *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985) (emphasis added).

52 *Id.*

inquiry for the court is whether there is "any evidence in the record that could support the conclusion" reached by the decisionmaker.[53]

Under this minimal evidentiary burden, Fluker's challenge to Incident Report 4086254 fails. The DHO, in his written report, relied on the incident report, staff memorandums, Fluker's statements, TRU system emails, and other documentary evidence to find that Fluker had committed Offense Code 199, phone abuse most like criminal phone abuse (Offense Code 196).[54] In particular, Fluker's emails reveal that he was attempting to use a fraudulent Non-Governmental Organization (NGO) that he had created to issue fictitious victim-determination letters for clients (who were not actual trafficking victims) so those clients could secure relief from negative information reported by credit reporting agencies.[55] The DHO also specifically found that Fluker's multiple statements made during the disciplinary process about his at-issue communications were "inconsistent."[56] This substantial evidence plainly satisfies the "some evidence" requirement, and thus there was no due process violation simply because the DHO did not credit Fluker's proffered evidence.[57]

---

[53] *Id.* at 455-56; *see also Denny v. Schultz*, 708 F.3d 140, 144 (3d Cir. 2013) ("[T]he 'some evidence' standard is a standard of appellate review to be applied by the district court rather than a burden of proof in a prison disciplinary proceeding." (citation omitted)).

[54] *See* Doc. 9-8 at 3-5.

[55] *See id.* at 4.

[56] *Id.*

[57] To the extent that Fluker argues that his prison communications were related to pending federal litigation in the United States District Court for the Eastern District of Michigan, that argument is meritless. The Court has reviewed Fluker's federal lawsuits filed in the Eastern District of

Because this Court's only question on habeas review is whether there was "any evidence in the record" to support the DHO's decision, and because the Court answers that question in the affirmative, Fluker's due process claim regarding Incident Report 4086254 will be denied.

Lastly, Fluker argues that his sanctions were "excessive" and "arbitrary."[58] However, his sanctions were commensurate with the level of severity of his offenses (*i.e.*, "Greatest Severity") and explicitly permitted via regulation.[59]

## III. Conclusion

For the foregoing reasons, the Court will deny Fluker's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

Michigan. *See generally Fluker v. Trans Union, LLC*, No. 1:22-cv-12240 (E.D. Mich.); *Fluker v. Trans Union, LLC*, No. 1:24-cv-12738 (E.D. Mich.), *aff'd*, No. 25-1752 (6th Cir. 2026). Those cases have nothing to do with trafficking victims, NGOs, Regulation V from the Consumer Financial Protection Bureau, or any other issue implicated in Fluker's prison communications. *See Fluker*, No. 1:22-cv-12240, Doc. 1 (E.D. Pa. Sept. 22, 2022) (complaint alleging fraudulent "hard inquiries" on his credit reports); *Fluker*, No. 1:24-cv-12738, Doc. 1 (E.D. Mich. Oct. 16, 2024) (complaint); *id.*, Doc. 13 (E.D. Mich. Dec. 19, 2024) (report and recommendation recounting Fluker's allegations of "errors related to fraudulent hard inquiries" on his credit report and recommending dismissal pursuant to 28 U.S.C. § 1915(e)(2) for lack of standing); *id.*, Doc. 14 (E.D. Mich. Jan. 7, 2025) (adopting report and recommendation). Thus, Fluker's assertions that the DHO should have addressed this evidence, explained his reasons for rejecting it, or ultimately found Fluker innocent of the disciplinary infraction because of it are frivolous.

[58] Doc. 1 at 2-3.

[59] *See* 28 C.F.R. § 541.3 (Table 1) (B.1) (disallowance of 27 to 41 days of good conduct time); *id.* (Table 1) (F) (loss of privileges, *e.g.*, visiting, telephone, commissary, and recreation).